**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **RANDOLPH S. KOCH**<br><br>Plaintiff,<br><br>vs.<br><br>**MARY SCHAPIRO**,<br>Chairman, United States Securities and<br>Exchange Commission,<br><br>Defendant. | Civil Action No. CV 1:02-1492 (JDS)<br><br><br><br>**ORDER** |

Presently before the Court is the Defendant's Motion to Dismiss and, in the alternative, for Summary Judgment.  A hearing was held on April 20, 2010 wherein Plaintiff was represented by Attorney Ellen Renaud and Defendant was represented by Marina Utgoff Braswell.  After having considered the Parties oral arguments and reviewed the submitted briefs, this Court is prepared to render a ruling at this time.

FACTUAL BACKGROUND

Plaintiff Randolph Koch began his employ with the U.S. Securities and Exchange Commission ("SEC") in December 1991 as a financial analyst. He worked in Branch 16 of the

SEC's Office of Disclosure and Review ("ODR").  He reported to Frank Donaty, the Chief of

Branch 16.  Until 1993, Donaty reported to Carolyn Lewis,  Assistant Director of ODR.  Donaty

also reported to Gladwyn Goins, the Associate Director of Division Investment Management

("DIM"), of which ODR was a part of.

In his financial analyst role, Plaintiff's duties were to review corporate submissions and

registration statements that were provided to the SEC.  In addition, because Plaintiff also  had a

law degree, he was also asked to provide a limited review of SEC filings from a legal

perspective.  Plaintiff alleges that this created a greater workload for him than his fellow

financial analyst colleagues.  In 1993, he had discussions with his superiors regarding changing

his personnel classification from a financial analyst to that of a staff attorney position.  However,

because the change in classification included a change from competitive service to excepted

service, the classification change would include certain restrictions and a probationary period.

Prior to his employment with the SEC, Plaintiff had suffered a heart attack.  At the

beginning of his employ with the SEC, Plaintiff was able to maintain the alleged heavier

workload despite his heart condition.  Beginning in 1992, Plaintiff claims that his normal

financial workload in addition to his legal workload began to take a toll on his heart condition.

He informed his superiors of his health issues.  He contends that they did not decrease his

workload.

In April or May of 1994, Plaintiff requested that his heart condition be  accommodated

and that he be allowed to work on a flexible or "gliding" schedule.  In addition, Plaintiff alleges

that prior to their denial of the accommodation, his superiors did not relay his request to human

resources.

One week after Plaintiff's accommodation request,  Plaintiff's superior Frank Donaty asked Plaintiff to provide medical information from his physician to support his accommodation requests relating to his heart condition.  Plaintiff's physician, Dr. Kuhn, complied and provided a letter noting Plaintiff's history of cardiac disease which included a heart attack, hyperlipidemia and hypertension.  That letter further noted that Plaintiff's heavy work load and hours put him at a "high risk of recurrent cardiac events" and recommended that his work load be lightened to forty hours per week and that it be made to be "more flexible" so that Plaintiff might participate in a cardiac rehabilitation program.  Further, Plaintiff claims that he suffers from sleep apnea which makes it difficult for him to wake up in the morning.

Donaty responded to Dr. Kuhn's letter regarding Plaintiff's health recommendations and care accommodations.  In the letter, Donaty contested Plaintiff's claim of a heavy workload as well as concluding that an accommodation was not necessary given the predominantly sedentary nature of Plaintiff's work.  In addition, Donaty requested that Dr. Kuhn provide additional information regarding Plaintiff's medical issues.  The record reflects that Dr. Kuhn never responded to Donaty's request nor that Plaintiff attempted to procure the requested additional information.  Donaty acknowledges that, contrary to Dr. Kuhn's recommendations,  he never reassigned work for Plaintiff in order to accommodate Plaintiff's medical conditions.  Ultimately, the Plaintiff's accommodation request was denied.

Goins, Donaty's supervisor, read Dr. Kuhn's letter to say that Plaintiff needed an accommodation because of his "weight problem."  Consequently, he concluded that Plaintiff did not present any sort of a recognized physical ailment where an accommodation was necessary.

In light of his superiors' decisions to not provide Plaintiff with a medical accommodation, Plaintiff began to request use of credit hours, compensatory time and leave time. Plaintiff claims that Defendant had a policies for compensatory time and credit hours that allowed employees to earn credit for extra hours at their convenience and then use the credit hours in place of leave. Plaintiff claims that Defendant impermissibly denied him this option.

During that same period, Plaintiff began to seek counseling from the Equal Employment Office (EEO) for his denial of promotion/conversion to the GS-13 staff attorney position as well as denial of an accommodation for his heart condition. He informed his superiors of his intent to complain regarding this alleged discrimination. He alleges that his decision to engage in this protected activity (report of discrimination) angered his superiors and they retaliated against him by, among other things, giving him poor performance evaluations starting in July of 1993. He also alleges that he received a negative evaluation in May 1994.

The record reflects that from 1993 through 1998, Plaintiff was receiving at least as high performance evaluations ratings as other financial analysts in his branch. Plaintiff has never received an unsatisfactory rating.

Also during this same period, Plaintiff was negotiating reassignment from his current position of financial analyst to that of a GS-13 staff attorney. However, the human resources office noted that since Plaintiff had no prior legal securities experience, he could not be converted to a staff attorney unless he serve a year probationary period and relinquish his M.S.P.B. rights (Merit System Protection Board) for two years and accept a lower starting GS-12 staff attorney position. Plaintiff cites to at least two employees that were excepted from the probationary and waiver of M.S.P.B. rights requirements. Defendant responds by stating that

those instances were an oversight and do not reflect a policy or norm within the SEC.  In addition, Defendant notes that other financial analysts have accepted offers similar to that offered to the Plaintiff.

Lastly, in March of 1996, Defendant posted a vacancy announcement for a GS-13 Financial Analyst position in ODR's Branch 22 office. One of the requirements of the announcement was that the applicant must have an undergraduate degree in a related field. Plaintiff complained to the personnel office that the language of the announcement made him ineligible even though he had a graduate degree in a related field. Personnel agreed and informed Plaintiff that they would repost the position with the appropriate corrections.  However, according to Plaintiff, although the position was reposted,  it was not announced thru the normal channels.  Plaintiff alleges that because Defendant did not post the vacancy announcement pursuant to its normal procedures, he did not become aware of the posting until the day before the application was due and therefore did not have sufficient time to complete the application.

Plaintiff's present discrimination, retaliation and failure to accommodate claims are brought under the Civil Rights Act of 1964, the Americans with Disabilities Act, the Rehabilitation Act and the Age Discrimination in Employment Act.

PROCEDURAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  To survive a motion to dismiss, a complaint  must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (*quoting* Bell

Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim has facial plausibility when the plaintiff pleads factual content  that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Id. at 1955.  The issue on a motion to dismiss is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims.  Twombly, 550 U.S. at 583 (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, the court employs a two-pronged approach.  Id.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Id. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Id. In other words, "a plaintiff must aver in his complaint 'sufficient factual matter, accepted as true, to state a claim that is plausible on its face.' "  al-Kidd v.Ashcroft, No. 06-36059, 2009 WL 2836448, at *5 (9th Cir. Sept. 4, 2009) (quoting Iqbal,129 S.Ct. At 1949).  Courts must accept as true all facts alleged in the complaint and draw reasonable inferences in favor of plaintiff. Newcal Indus., Inc. v. Ikon Office Solutions, 513 F.3d 1038, 1043 (9th Cir. 2008).

In the alternative to a motion to dismiss, Defendant seeks summary judgment on Plaintiff's present claims.  Where no genuine dispute exists as to any material fact, summary judgment is required.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  A genuine issue of material fact is one that would change the outcome of litigation.  Id. At 247.  "The burden on the moving party may be discharged by 'showing' – that is, pointing out t the [Court] – that there is an absence of evidence to support the non-moving party's case."  Sweats Fashions, Inc. v. Pannill Knitting Co., Inc., 833 F.2d 1560, 1563 (Fed. Cir. 1987).

Once the moving party has met its burden, the non-movant may not rest on mere

allegations, but must instead proffer specific facts showing that a genuine issue exists for trial.

Matsushita Elec. Idus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Thus, to avoid

summary judgment here, Plaintiff (as the non-moving party) must present some objective

evidence that would enable the Court to find he is entitled to relief.  In Celotex Corp. v. Catrett,

the Supreme Court held that, in responding to a proper motion for summary judgment, the party

who bears the burden of proof on an issue at trial must "make sufficient showing on an essential

element of [his] case" to establish a genuine dispute.  477 U.S. 317, 322-323 (1986).  In

Anderson, the Supreme Court further explained that "the mere existence of a scintilla of evidence

in support of the Plaintiff's position will be insufficient; there must be evidence on which the jury

could reasonably find for the Plaintiff."  Anderson, 477 U.S. At 252;  *see also* Laningham v.

Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (the non-moving party is "required to provide

evidence that would permit a reasonable jury to find" in its favor).


DISCUSSION

Plaintiff brings claims that he has been discriminated against because of (1) his Jewish

ethnicity;  (2) his heart condition; (3) the fact that he is over 40 years old; and (5) his complaints

to the Equal Employment Office.  Presently before the Court is the Defendant's combined

Motion to Dismiss and Motion for Summary Judgment.


***Motion to Dismiss***

Defendant contends that this Court lacks jurisdiction over many of Plaintiff's claims

because he has failed to exhaust these claims at the administrative level before bringing them

before this Court.  Defendant contends that a plaintiff may not raise, for the first time, a claim in

district court that was not raised in an administrative complaint or reasonably related to a charge

raised administratively.  Park v. Howard University, 71 F.3d 904, 907 (D.C. Cir. 1995).

These administratively unaddressed claims include non-selection for attorney positions,

poor performance evaluations, failure to grant leave requests under FMLA, failure to grant sick

leave, placement of restrictions on leave, adverse employment actions related to being assigned

more work, assignments that were inconsistent with his job description, and failure to provide

adequate information regarding conversion from one job title to another.

Defendant claims that the above-stated claims were not raised at the administrative EEOC

review level and therefore has failed to exhausted his administrative remedies and thus his

present  claims are statutorily barred.

In his response brief, Plaintiff does not dispute any of these claims.   Thus, the Court can

find that they have merit and grant a motion to dismiss on these issues.

***Motion for Summary Judgment***

Plaintiff has stepped away from most of his claims choosing rather to focus on the four

following claims: (1) heavy workload; (2) refusal to accommodate Plaintiff's disability; (3) non-

promotion to a higher position; and (4) reclassification to staff attorney position.

1.      HEAVY WORKLOAD

Plaintiff alleges that because he asked for medical accommodations and threatnt to file

an EEOC complaint, his increased workload constituted an adverse action.  Further, Plaintiff contends that Defendant has failed to articulate any legitimate reason for Plaintiff's comparatively heavier workload.   Consequently, Plaintiff contends that because of Defendant's alleged "silence" on the issue, Plaintiff has established a prima facie case of discrimination.

To establish a prima facie case of discrimination, Plaintiff must show that (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination.  Brown v. Brody, 199 F.3d 446, 452 (D.C. Cir. 1999).  To establish the third and final element of his prima facie case, the plaintiff must draw some nexus between the first two elements from which the fact-finder could infer discriminatory purpose.  McDonnell Douglas v. Green, 411 U.S. 792, 802 (1973).  Plaintiff has the initial burden of proving by a preponderance of the evidence a "prima facie" case of discrimination.  Id.

Plaintiff contends that he has met the first prong of protected class because he is of Jewish ethnicity and disabled.  He contends that the adverse action at issue is Defendant's assignment to him of a heavier workload than that of his co-workers.  Specifically, Plaintiff alleges that he reviewed 40% more registration statements than his colleagues over the course of a four year period and that his 1993-1995 performance evaluations stated that he handled an above average amount of filings.  Lastly, Plaintiff contends that he was met the last prong of discrimination because he was treated less favorably than his co-workers that were not in his protected class.

Defendant refutes the Plaintiff's claim of a heavier workload by citing to portions of  his deposition wherein he concedes that the number of registrations reviewed does not necessarily

reflect a greater amount of work performed.   Rather the amount of work involved in each level

of registration review varies.   Further, Defendant contends that Plaintiff has failed to present

evidence of the depth of review he performed as compared to that of his co-workers.   Lastly,

financial analysts like Plaintiff had other work duties in addition to reviewing registration

statements.   Plaintiff concedes that he does not know the extent of those other work duties

performed by his co-workers.

     At best, Plaintiff's claims of a heavier workload are subjective.   Such subjective belief is

insufficient to survive summary judgment.   Mills v. First Fed. Sav. & Loan Ass'n of Belvidere,

83 F.3d 833, 841-42 (7th Cir. 1996).   Even if Plaintiff had direct evidence of a heavier workload,

harder work assignments do not constitute an adverse employment action.   Johnson v. Cambridge

Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) (noting that plaintiff's claim that he was given

harder work assignments failed to "show some quantitative or qualitative change in the terms or

conditions of his employment that [was] more than a mere subjective preference").

     An adverse action in the discrimination context is a "significant change in employment

status, such as hiring, firing, failing to promote, reassignment with significantly different

responsibilities, or a decision causing significant change in benefits."   Douglas v. Donovan, 559

F.3d 549, 552 (D.C.Cir.2009) (quoting Taylor v. Small, 350 F.3d 1286, 1293 (D.C.Cir.2003)).   It

is not out of the ordinary for employees to have been expected to shoulder an extra load on

occasion, or to have been asked to step in if there were unexpected staff shortages.   Brodetski v.

Duffey, 141 F.Supp.2d 35, 45 (D.D.C.,2001).   Moreover, "a materially adverse change in terms

and conditions of employment must be more disruptive than . . . an alteration of job

responsibilities."   Id. (citing Crady v. Liberty Nat'l Bank & Co. Of Ind., 993 F.2d 132, 136 (7[th]

Cir. 1993)).   Lastly, it is not the place of courts to review every task that management assigns to employees.  Mungin v. Katten Muchin & Zavis, 116 F.3d 1549, 1556 (D.C.Cir.1997).   The fact that a plaintiff has more work on occasion than another does not give rise to a materially adverse action.  In addition, given Plaintiff's concession regarding the registration statements and the fact that Plaintiff is not aware of the extent of his similarly-situated co-worker's workload, his claims of a heavier workload are subjective at best.

Moreover, because Plaintiff has already conceded that his alleged adverse employment action of increased workload was due, in large part if not entirely, to his legal expertise, he cannot establish a causal nexus between being in a protected class and Defendant's alleged adverse employment action.  McDonnell Douglas, 411 U.S. at 802.  As such, this Court concludes that Plaintiff has failed to establish a prima facie case that he suffered an adverse action of heavier workload.  Defendant's Motion for Summary Judgment on this ground is GRANTED.

In addition, Plaintiff claims that the heavier workload was in retaliation for his initiation of EEO activity.  To establish a prima facie claim of retaliation, Plaintiff must show that (1) he engaged in a statutorily protected activity; (2) a reasonable employee would have found the challenged action materially adverse in that it may have deterred him from complaining of discrimination; and (3) there existed a causal connection between the protected activity and the materially adverse action.  Burlington Northern v. Santa Fe Ry. Co. v White, 126 S.Ct. 2405, 2415-16 (2006).

In the instant case, Plaintiff's protected activity was the initiation of the Equal Employment activity.  Plaintiff contends that the adverse action arising from this was an increased workload.  Lastly Plaintiff contends that the adverse action were directly related to

Plaintiff's initiation of his EEO activity and request for an accommodation.

The record reflects that Plaintiff first began making claims of a heavier workload in 1992 and stated that his workload became oppressive in February and March of 1994.  However, the record also reflects that he did not initiated his EEO activity in April of 1994.  Since his claims of a heavier workload began well before he initiation of EEO activity, Plaintiff cannot now claim that the alleged increase workload was a retaliatory response by Defendant.  Moreover, in order to establish an adverse action, plaintiff must reasonably demonstrate that he suffered "materially adverse consequences affecting the term, conditions, or privileges of [his] employment."  Brown, 199 F.3d at 457.  A "materially adverse" action constitutes actions such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  Id. at 456.

Regarding Plaintiff's alleged claim of an increased workload, beyond the cases already cited, courts have held that "minor changes in work-related duties or opportunities do not constitute actionable injury unless accompanied by an adverse change in terms, conditions or privileges of employment."  Stewart v. Evans, 275 F.3d 1126, 1135 (D.C. Cir. 2002).  Further, "mere inconvenience and alteration of job responsibilities will rise to the level of adverse action."  Id.

Here, Plaintiff's allegations of a workload increase began in 1992 through February and March 1994.  This is well before his initiation of EEO activity in April 1994 and therefore cannot be considered a retaliatory action.  In addition, without evidence of the workload of Plaintiff's similarly-situated colleagues to compare against, he cannot make a prima facie claim of discrimination.   Further, Plaintiff has failed to establish that any alleged increase in work

constituted an adverse change in the terms, conditions or privileges of Plaintiff's employment.

Lastly, because Plaintiff has also conceded that his heavier workload was due in large part, if not

entirely, to his additional legal expertise, he cannot establish a causal connection between the

protected activity and the materially adverse action.  Defendant's Motion for Summary Judgment

on this ground is GRANTED.

2.    REFUSAL TO ACCOMMODATE DISABILITY

Next, Plaintiff alleges that Defendant failed to engage in the "good faith interactive

process" regarding his request for (1) an accommodation of reduced hours and to go to cardiac

rehabilitation and (2) a flexible schedule accommodation.

The Rehabilitation Act requires that an agency must make reasonable accommodation to

the "known physical and mental limitations of an otherwise qualified individual with a disability

who is an applicant or employee, unless [the employer] can demonstrate that the accommodation

would impose an undue hardship."  42 U.S.C. § 12112(b)(5)(A);  Barth v. Gelb, 2 F.3d 1180,

1183 (D.C.Cir.1993).  An individual is entitled to the protections of the Rehabilitation Act if he

can establish that he is a qualified person with a disability; that he can perform the essential

functions of his job with or without reasonable accommodation; and either that his employer

failed to reasonably accommodate his disability or that he was terminated due to her disability.

Barth, 2 F.3d at 1186.

"Because  the interactive process is not an end in itself, it is not sufficient for [the

employee] to show that the [employer] failed to engage in an interactive process or that it caused

the interactive process to break down.  Rather, [the employee] must show that the results of the

inadequate interactive process was the failure of the [employer] to fulfill its role in 'determining what specific actions must be taken by an employer' in order to provide the qualified individual a reasonable accommodation." Rehling v. City of Chicago, 207 F.3d 1009, 1015-1016 (7th Cir. 2000) (*quoting* Beck v. Univ. of Wis. Bd. of Regents, 75 F.3d 1130, 1135 (7th Cir. 1996)). The interactive process begins when an employee requests an accommodation. Once this process has begun, both the employer and the employee have a duty to act in good faith. Conneen v. MBNA America Bank, N.A., 334 F.3d 318, 333 (3rd Cir. 2003).

Regarding the accommodation request, this Court concludes that Defendant did in fact engage in the good faith interactive process. After Plaintiff made a request for accommodation for his heart condition, Donaty sent a letter to Plaintiff's doctor requesting information regarding the nature of his heart condition and the type of accommodations desired. After Plaintiff's doctor responded, Donaty sent another letter requesting additional information. Plaintiff's physician, Dr. Kuhne did not respond to the request. In addition, the record reflects that Plaintiff made no attempt to procure the requested additional information. Absent some tangible effect on the employee's terms and conditions of employment or other material harm, an employer's request for medical documentation for the purpose of assessing an employee's credibility or determining an appropriate accommodation is not an adverse employment action. Dage v. Johnson, 537 F.Supp.2d 43, 63-64 (D.D.C.2008). Given that it was ultimately the Plaintiff that failed and/or ended the good faith interactive process to determine the feasibility of the accommodation, this Court concludes that Defendant did not violated the Rehabilitation Act. Defendant's Motoin for Summary Judgment on this ground is GRANTED.

Regarding the flexible/gliding schedule, the request arose from Plaintiff suffering from

sleep apnea which made it difficult for him to wake up in the morning and thus arrive to work in a timely manner.  In this instance, Plaintiff acknowledges that Defendant did in fact engage in the interactive process.

Defendant had Plaintiff visit an occupational health physician that examined him regarding his sleep apnea ailment. The physician wrote a letter that stated that Plaintiff did in fact have sleep apnea and could not be expected to arrive at work dependably before 11 a.m. However, that same physician, subsequently wrote another letter, clarifying the severity of Plaintiff's sleep apnea, stating that it varied from day to day, but he predicted that Plaintiff should be able to arrive to work on most days between 9:30 and 10:00 a.m.

Plaintiff requested an accommodation of allowing him to arrive at work by 11:00 a.m. Based on the physician's recommendations,  Defendant offered the accommodation that Plaintiff could arrive at work between 9:30 and 10:00 a.m.   In addition, the record reflects that Defendant offered Plaintiff a start time as late as 10:30 a.m.  Plaintiff claims that the 10:00 a.m. start time counteroffer did not reflect the reality of his medical needs and he rejected the accommodation. However, Defendant's Statement of Material Facts reflect that the Plaintiff did accept the 10:30 a.m. start time.

Given that the Defendant offered to accommodate Plaintiff's sleep apnea ailment by allowing him a flexible/gliding schedule to come in between 9:30 and 10:30 a.m., this Court concludes that Defendant has engaged in the good faith interactive process.  Moreover, the record reflects that Plaintiff accepted the 10:30 a.m. start time.  For the foregoing reasons, Defendant's Motion for Summary Judgment on this ground is GRANTED.

Lastly, to the extent that Plaintiff alleges that Defendant impermissibly denied his  request

to work from home for some amount of his work hours, Defendant notes that the SEC does not

offer that option.  Homburg v. UPS, Inc., 2006 WL 2092457, at *9 (D.Kan. July 27, 2006);

Grube v. Lau Indus. Inc., 257 F.3d 723, 728 (7th Cir.2001).  In addition, Plaintiff failed to raise

this claim at the administrative EEO level and may not raise it here.

Here, the record clearly reflects that Defendant did in fact engage in the good faith

interactive process with the Plaintiff in order to reach an accommodation.  The record further

reflects that Plaintiff refused to comply with Defendant's additional requests for information or

refused the accommodations offered.  Defendant's Motion for Summary Judgment on this ground

is GRANTED.

3.    RETALIATION AND DISCRIMINATION BASED ON REFUSAL OF
      PROMOTION/CONVERSION

Plaintiff contends that he was discriminated against based on his race, age and disability

and/or retaliated against for engaging in EEO activity when Defendant refused to promote him

and/or convert him to a GS-13 staff attorney position unless he waive his Merit System

Protection Board (M.S.P.B.) rights and serve a one-year probation.  Plaintiff acknowledges that

he rejected the Defendant's offer to convert him to a GS-12 staff attorney position with above

restrictions.

Generally, to establish a prima facie case of discriminatory or retaliatory non-selection or

failure to promote, plaintiff must show that (1) he is a member of a protected class; (2) he applied

for and was qualified for an available position; (3) despite his qualifications, he was rejected; and

(4) either someone filled the position or it remained vacant and the employer continued to seek

applicants.  Holcomb v. Powell, 433 F.3d 889, 895 (D.C.Cir. 2006).  However, prima facie

factors fall by the wayside once defendant articulates a legitimate, non-discriminatory and/or non-retaliatory reason for its action.  Brady, 520 F.3d at 493-94.

Defendant cites to its policy requiring any employee converting from the competitive service to exceptive service (which the GS-12 and GS-13 positions were) to serve a one-year probation period and complete two years of service without M.S.P.B. rights.  Plaintiff contends that because he knows of at least two other employees that were excepted from this requirement, the Defendant must be discriminating or retaliating against him.  Defendant Donaty acknowledges those two instances were oversights and were the exception rather than the norm. Moreover, Plaintiff does not dispute that aside from the two aformentioned instances, there were financial analysts before and after him that were offered and accepted the conditioned conversion to staff attorney.

In addition, Plaintiff cites to 5 U.S.C. § 7511(a)(1)(c)(ii) which permits an employee "who has completed 2 years of current continuous service in the same or similar positions in an Executive agency under other than a temporary appointment limited to 2 years or less" to convert to an excepted service position without waiving their M.S.P.B. rights.  Here, Plaintiff argues that his duties from his current financial analyst position to the desired GS-13 Staff Attorney position require the "same or similar" duties in light of the additional legal duties he took on because of his legal background.   Moreover, Plaintiff contends that in light of his legal background, he is already reviewing documents from a legal perspective.  In support, he cites to Supervisor Donaty's alleged statement that although Plaintiff did not hold a staff attorney title, he did perform the same duties as his attorney colleagues.  Regardless of this, Plaintiff contends that Defendant, through his supervisor Goins and Donaty, denied his conversion to a GS-13 staff

attorney position without waiver of M.S.P.B. rights and without waiver of the probationary period.

The record reflects that Donaty sought for Plaintiff to be converted to GS-13 attorney position. However, because personnel concluded that Plaintiff did not have the requisite securities experience, Donaty revised his recommendation to a GS-12 staff attorney position. Plaintiff was offered the GS-12 position and asked to sign the agreement to waive M.S.P.B. Rights and accept a probationary period on June 3, 1994. Personnel further informed Plaintiff that if he accepted the GS-12 staff attorney position, he could be promoted to GS-13 after six months. Personnel went on to state that because the GS-12 attorney position was an excepted service position, Plaintiff would have to waive his M.S.P.B. rights for two years and accept a one-year probationary period.

Here, the record reflects that Plantiff was in fact offered the GS-12 attorney position, albeit with a waiver of M.S.P.B. rights and probationary period. Moreover, Defendant has presented evidence that it was the SEC's policy to require all GS-12 attorneys to serve a one-year probationary period and waive two years of M.S.P.B. rights. In addition, Defendant has presented evidence that, with the exception of the persons cited by Plaintiff, financial analysts that were similarly-situated to Plaintiff, had before and after Plaintiff, accepted conversions to staff attorney positions with the same restrictions as those offered to Plaintiff.

As such, Plaintiff has failed to show how he was retaliated against when he was in fact offered the GS-12 attorney position. Moreover, because other similarly-situated persons were

---

To the extent Plaintiff is alleging that he should have been offered the GS-13 attorney position, the record reflects that Plaintiff did not have the required legal securities experience to qualify for the GS-13 position. As such, this Court concludes that Defendant has a non-discriminatory reason for not offering Plaintiff that position.

required to accept the same restrictions in order to convert, Plaintiff has failed to show that Defendant discriminated against him by requiring him to accept those same requirements as well.

Next Plaintiff argues that his present financial analyst position in conjunction with his additional legal duties is substantially similar to a GS-13 staff attorney position that, under 5 U.S.C. § 7511(a)(1)(c)(ii), he need not waive his M.S.P.B. rights nor accept a probationary period.

Merely because Plaintiff performs some duties that staff attorneys perform in his present position, does not mean that he performs all the duties that staff attorneys perform.  Thus, just because he performs some legal duties in light of his legal background should not automatically qualify him to convert his present financial analyst position to that of a GS-13 staff attorney. Additionally, Donaty's statements regarding Plaintiff's legal qualifications were specifically limited to the GS-12 position and not the GS-13 position.

To the extent Plaintiff contends that the failure to convert him was in retaliation to his filing of an EEO Complaint, the record reflects that his request to convert from a financial analyst to a staff attorney occurred in November 1993 and the request to accept the probationary period for the GS-12 attorney position occurred in June 1994.  This all occurred before Plaintiff filed his EEO Complaint and thus cannot be relied on to establish a retaliation claim.

For the foregoing reasons, Defendant's Motion for Summary Judgment on this ground is GRANTED.

4.      DISCRIMINATION AND RETALIATION FOR DENIAL OF PROMOTION TO
        GS-13 FINANCIAL ANALYST

Plaintiff contends that Defendant intentionally kept him from applying for a GS-13

Financial Analyst position in March 1996.  Specifically, Plaintiff contends that they placed

invalid criterion in the original GS-13 financial analyst position that made him ineligible.

Specifically, the invalid criterion was that an undergraduate degree in a related field was

required.  Since Plaintiff had a graduate degree in a related field, he alleges that it would have

invalidated him for the position.  Plaintiff brought the invalid criterion to personnel's attention

and they informed him that they would repost the position with the corrected criterion.

     Plaintiff contends that when the position was reposted with the correct criterion, it was

not posted in the normal places nor was it posted following the usual procedures.  Plaintiff

contends that he discovered the posting the day before the deadline and was unable to apply for

it.

To show retaliation in failure to promote, Plaintiff must present prima facie evidence that

(1) he is a member of a protected class; (2) he applied for and was qualified for an available

position; (3) despite his qualifications, he was rejected; and (4) either someone filled the position

or it remained vacant and the employer continued to seek applicants.  Holcomb v. Powell, 433

F.3d 889, 895 (D.C.Cir. 2006).

It is undisputed that Plaintiff never applied for the position.  However, case law has

reflected that failure to apply for a position does not bar a Title VII claim so long as plaintiff

made every reasonable effort to convey his interest in the job.  E.E.O.C. v. Metal Serv. Co., 892

F.2d 341, 348 (3rd Cir. 1990).  Moreover, an employer's failure to make its employees aware of

vacancies makes the application requirement more relaxed an the employee shall be treated as having applied.  Furnco Constr. Corpt. v. Waters, 438 U.S. 567, 577 (1978).

Plaintiff contends that the SEC noticed his interest in the position and their failure to broadly disseminate the corrected posting implicates discrimination and retaliation.  However, Plaintiff concedes that he received an email informing him that the position at issue was being reposted.   As such, Plaintiff was on notice that the vacancy announcement was to be reposted - not the vacancy posting itself, just the fact that it would be reposted.

Defendant does not dispute that the posting did not occur in the usual places nor was it posted through the usual procedures. However, to the extent that Plaintiff claims that he is being discriminated or singled out, he fails to point to any evidence that he was treated differently than other persons that were interested in the position but received no notice.  Plaintiff claims that the email posting was never mailed to his division.  Consequently, others in his division similarly-situated to him did not receive knowledge of the posting and, if at all, were equally prejudiced. As such, Plaintiff cannot establish that he was singled out and discriminated against.

To the extent Plaintiff claims that he only found out of the re-posting the day before it closed, Plaintiff already knew via email that the posting was to occur and hence could have been preparing for it prior.  Additionally, Plaintiff could have sought additional time to complete the application but chose not to.   As such, no one at the SEC was aware, much less on notice, of Plaintiff's interest in the position.  Lastly, Plaintiff has presented no evidence that anyone at the SEC who prepared the vacancy announcement had any knowledge of Plaintiff in any manner as to raise an inference of discrimination.

For the foregoing reasons, Defendant's Motion for Summary Judgment on this ground is GRANTED.

CONCLUSION

Because this Court concludes that Plaintiff cannot meet the elements of his claims under the Civil Rights Act, the Americans with Disabilities Act, the Rehabilitation Act and the Age Discrimination in Employment Act, for the foregoing reasons, IT IS HEREBY ORDERED that,

Defendant's Motion to Dismiss or, in the alternative, Motion for Summary Judgment (*Doc. #93*) is GRANTED.

IT IS FURTHER ORDERED that the Clerk of Court enter Judgment in favor of the Defendant.

The Clerk of Court shall notify the Parties of the making of this Order.

DATED this 6th day of January, 2011.


_____/s/Jack D. Shanstrom_____
Jack D. Shanstrom
Senior U.S. District Judge